Wright, J.,
delivered the opinion of the Court.
This is an action of ejectment,, to recover a tract of land in Cannon County, in which verdict and judgment were rendered, against the plaintiff, and he appeals to this Court. He deraigns his title to the land in dispute as follows: A grant from the State, to William Bates and William Cummings, dated the 20th of May, 1837, and a deed to himself from said Bates, for a part of the grant, dated the 9th of Juno, 1840. This grant called for 3,000 acres, less 1,182| acres of older and better titles included *531 within its boundaries, but excluded' from its legal operation. And the deed was a conveyance of 1,250 acres off the North end of the grant. He insisted that this deed carried tbe moiety of Cummings, as well as the moiety of Bates in the 1,250 acres; and to es'ablish this, read a title bond from Bates to Cummings, for other lands not embraced within this grant, and a writing endorsed upon the back thereof, signed, but not sealed, by both Bates and Cummings, dated the 12th of June, 1840, to the effect that Bates had sold one of the tracts within the bond for a patent right to make shingles; likewise, a 3,000 acre tract that was not embraced within the bond; and it was then declared that he was authorized to sell the same to the best advantage for them both, and give said' Cummings half of the profits. This 3,000 acres is not described in the endorsement, and it nowhere appears to be the tract contained within the above grant. The title of the defendants was made out as follows: A grant from the State to William Capshun, for 200 acres -of land, dated 9th of December, 1839 ; proof that one William Morris had, in 1841, purchased a part of this grant; a grant-from the State to said Morris, for 200 acres, dated the 9th of December, 1848, which included that part of the Capshun grant so purchased;- a deed from Morris to one Jacobs, dated the 4th of August, 1849, for this 200 acres; a deed for the same land, from Jacobs to George Grizzle, dated the 11th of March, 1850; and also, a deed from George, to the defendant, James Grizzle, for the same land, dated the 24th of January, 1857. It was admitted by tho.de-' fendants, that the deed from Bates to the plaintiff, covered the land in dispute, and that defendants were in possession, and claimed title to said land, at the commencement *532 of the suit, on the 23d of January, 1857. The disputed land, as we understand the testimony, is not within the Capshun grant, but lies entirely south of it, and within the grant to Morris. The residence, improvements, and enclosures of defendant, Grizzle, are entirely within that part of his tract embraced by the Capshun grant — there being no residence, occupation, or enclosure on the disputed land, except two or three acres that defendant, Hutchins, had-put there, and which had been in cultivation some three or four years. This part of the tract, defendant, Grizzle, in 1851 or 1852, sold to Hutchins; and when the suit was brought, he took it back. In 1841, Morris took possession of that part of the land acquired by the purchase under the Capshun grant, and was living there in 1845, when he made the entry upon which the grant in his name, was founded; but, whether he, or Jacobs, or George Grizzle, lived there subsequently, does not appear. .The possession of defendant, James Grizzle, began in 1852, and has been continued ever since. One of the objects of Morris, in making the entry and obtaining the grant, was, to perfect his title to the Capshun grant, which, for some cause, he feared might prove defective; and, after the issuance of the grant to him, he, and those holding under him, including defendant, Grizzle, claimed under both titles, to the extent of the boundaries of the grant to Morris.
In 1849, there was a house within the grant to Morris, but without the Capshun grant, called the Julia house, that a woman by the name of Julia Homines, lived in; that Morris built this house for her and claimed the same; but before 1851, it was burned down, and shortly thereafter there was a part of the body of a house put up at the same place, which’defendant, Grizzle, sometimes used asa *533 bog pen, in which to feed his stock hogs. Others also nsed i.t for the same purpose. It was between a quarter and half mile from where he lived;' there was no ground enclosed there; there had been a fence, but it was all gone; that defendant, Grizzle, had cut board, and other timber, on the land outside of the Capshun grant, ever since he had gone there to live; and that Morris, under whom he held, had done the same thing, from.the time his guant issued; that the said land, outside of the Capshun grant, and about the Julia house, was not suited to the ordinary purposes of cultivation, and permanent improvement, the same being hilly, rocky, and valuable only for its timber; -that defendant, Grizzle, had not only used it to feed his hogs, as already, stated, but at another place on said land, outside of the Capshun grant, he had and kept up a sugar camp, for several years. Neither the plaintiff, nor those under whom he deraigns title, ever were in actual possession of any part of the land covered by the grant to Morris.
Upon these facts, the Circuit Judge instructed the jury, in substance, that, if the defendants and those under whom they claim; under their title, had held • the uninterrupted actual adverse possession of a part of the land embraced within the grant to Morris, for more than seven years before the commencement of this suit, claiming to the extent of the boundaries of said grant, and adversely to all others, such possession under said grant would give them a title to the land described therein, by operation of the Statute of limitations, although there may have been no actual possession outside of the Capshun grant; that if the possession was alone under the Capshun grant, then no pro *534 tection would be afforded beyond its boundaries; but if the possession under this grant, was abandoned, when the grant to Morris issued: or, if the possession was conjointly under both grants for seven years, and of the character stated, it would operate to vest the title under the grant to Morris, to the extent of its boundaries, although there may have been -.no actual possession outside of the Capshun gran t.
This instruction is erroneous. It has always been held, that to give a party the benefit of the Statute of limitations, lie must show an actual possession of some part of the land in dispute. Possession, outside of the conflict, does not displace the constructive possession of the true owner, which the law attaches to him in virtue of his better title. In this case, -the Statute did not begin to run, or protect the defendants, until the actual possession was extended beyond the Capshun grant to the land in disputo. We need only cite Stewart vs. Harris, 9 Hum., 714-717. We lay out of view the entries upon which the several grants are founded, because they are not in the record, so that we may judge of their legal effect, and the grants can, therefore, have no relation beyond their dates. This makes the plaintiff’s title superior to that derived under both the grants to Capshun and Morris. But this is immaterial, since the Capshun grant does not conflict with the title of the plaintiff; and whether it be superior or inferior, a possession under it, or which does not go beyond its boundaries, can be of no service to the defendants.
.If the Judge’s charge were free of error, it would be difficult to maintain the finding of the jury upon the facts. *535 There does not appear to have been such a continuity of possession, either within or without the Capshún grant, as would form the bar under the Statute of limitations. In this respect, the proof is defective.
There was no error in holding, that the deed from Bates to the plaintiff, only carried his moiety of the 1,250 acres, and not that of Cummings.
The judgment must be reversed, and the cause remanded for a trial de novo.